Richardson v. Stanley Works, Inc., 2009-13-54 Is it Mr. Kirshmaier? Kirshmaier, Your Honor. Hello. Read this to us. We're dealing with a tool. We are. All right. Good morning, Your Honor. May it please the Court. In Egyptian Goddess, this Court disposed of the points of novelty test, deciding that the century-old Gorham test of overall visual similarity is the sole test of infringement. But the District Court's decision below cannot be reconciled with Gorham or Egyptian Goddess. In claim construction below, the District Court ruled that the overall configuration of Mr. Richardson's design was not protected because the overall configuration was, quote, dictated by the functional purpose of the tool. Mr. Kirshmaier, when I look at the design in your patent, when I look at the defendants' several designs, they look very different. They have most of the same functionality, but the functionality has a different appearance. So what was wrong with the summary judgment of non-infringement? Two things, Your Honor. First, given the claim construction, which was improper and reviewed by this Court de novo, the finding of non-infringement was inevitable because the Gorham test was essentially never applied. Had the Court done exactly what you just did, Judge Lurie, which is said, I'm going to look at these two, I'm going to look at them in view of the prior art that's been submitted, and I don't think they're overall similar, that would have been a proper result. But that's not what the Court did. You mean I would have been affirmed by the Supreme Court? You would have been affirmed by every court, Your Honor. But that's not what the Court did in this case. But look, you've got the crowbar in the accused, which is on the same plane as the clamp, and in the design, it's at a 90-degree angle. You've got the hammer, which looks very different. You've got the clamp, which is jagged on one side on the claimed design and on both sides. And I think there are probably other differences, too. Again, Your Honor, that's not the test that the Court below used. It did not take and claim construction and said either that the claims construction was the recommended Egyptian goddess construction, which is a design consisting of what the picture shows, nor did it provide a list or a visual description describing the overall design. So what? So what? I mean, this was a bench trial. Suppose you're right that the judge didn't approach it in the right way. If we conclude as a matter of law, as Judge Lurie has suggested, that there's no infringement here because the only differences here are dictated by functionality, we should affirm, right? Your Honor, if the claim construction were correct, the Court should affirm, providing that the overall configuration of a design patent can be ruled to be functional. But there's no evidence for that. I don't think that's the point. The point is that some features are functional. And to the extent that the features are dictated by function, then you can't rely on that in applying the ordinary observer test to say that there's similarity. Well, first, they have to be solely dictated by function, Your Honor. As the court in Dexus found interpreting this court's decision in Egyptian goddess, functional elements can be ornamental if there's other ways of configuring a design. Some of the features here are ornamental. But the fact that the hammer's on one side, the claw's on the other, that the handle's long enough to step on, that there's a crowbar at the bottom, all of those seem to be dictated by function. There's no evidence in the record for that, Your Honor. Instead, the judge below made an a priori decision that these were dictated by function. The evidence that they are functional or designed solely because of their function isn't in the record. And to return to what I think you're both asking about is if the court found that the claim construction below was improper, and the proper claim construction is either a description in verbal terms or the recommended Egyptian goddess claim construction, which is the device as it appears in the pictures, but that the overall visual similarity when compared to prior art is not substantially similar between the patented design and the accused, then the court would enter a judgment of non-infringement here, and we'd be back to where we started. But that is not what the district court did below. In fact, the district court found that specifically on- And this isn't nuclear physics. I mean, this is looking at the ornamental appearance of simple objects. And if we're convinced of what the result is bound to be under a proper claim construction, what's the sense of churning the system so it comes back and then we give it the stamp of approval? I don't disagree with you, Judge Lorry. If the court here sitting here today says, in our minds, these two designs looked at them overall as a whole, there is not overall visual similarity, then the court likely should reverse on claim construction, provide some clarification, and then make a finding of non-infringement. We shouldn't churn the system. The reason why that seems unlikely, however, Your Honor, is the court's finding on page 6, lines 18 to 19. None of the prior art designs are as similar to Richardson's designs as is Stanley's. In other words, the court below found that had it been willing or able to consider the overall visual similarities, it would have found just that. But it seems to me what you're saying is that you could break this tool into several parts so that you could still have the same function by having two separate tools, which to some extent is what you had in the prior art. But why can't we say, well, in order to have the function that was sought here, you have to combine these features in a single tool. The only way to combine those features in a single tool is to have the hammer on one side, the claw, the crowbar at the bottom, basically what the district court said. First, we're not saying that they could be broken up into different tools and that would satisfy a user. We're saying instead that there's no evidence to support the statement you just made, Judge Dyke. There is no evidence that these have to be configured in the locations that they are. In fact, the only evidence was Mr. Richardson's testimony that they could be configured in other ways. The prior art shows that, and Stanley never even argued that the overall configuration It was his testimony that they could be configured in different ways. His testimony is in his affidavit submitted with the complaint. With our response to the motion for a summary judgment, I'm going to have to find that for your honor and provide it to you. But it is in the record. It's good to know where things are when you're referring to them. Yes, your honor. My colleague will find that for you, your honor. You'll come back and rebuttal. Thank you. But again, your honor, nothing permits in a prior case law, nothing permits the district court to, without evidence, simply conclude a priori that the overall configuration is functional. It makes it also impossible to apply the Gorham test on infringement. And it appears, looking at the record, that the court, in fact, didn't do that. There was no evidence supporting the court's separation of the functional aspects of the design from the ornamental. In the middle of page four of the decision, your honors, the court provides a list of what he found to be ornamental features. And it's the same list the court considers on infringement in the middle of page seven. Essentially, those were the only features that the court tested. And that completely obviates the Gorham test of overall visual similarity. And essentially, the court replaced the points of novelty test. Doesn't overall visual appearance consist of the visual appearance of the components? I don't think it does, your honor. Looking at components here, you might be looking at it as if it were in the back of the courtroom. I can't see the components. All I can see is some gross item. Whereas if I'm really looking at it, how can I not see the components? I see the overall aspect of it. But it has to consist of components. The court answered that both in Amini, and the court answered that in Egyptian goddess. First, the court in Amini said what is impermissible is making a list of the ornamental features because what happens as a result of that is you end up comparing only those ornamental features. And the design is much more than those isolated features. You have to ignore functional features, that is, features dictated by function. Do you still have a case here? Yes, absolutely, your honor, because the evidence in this case, the court may have to confront a case in the future where it deals with the issue of functionality and determining exactly what to do with an overall configuration that is functional on infringement. We already have the law on invalidity. We know what to do with it there. But the court with Egyptian goddess has said that it could be considered as well an infringer. But this isn't that case for the reason that the evidence in this case didn't support the court's finding of the overall configuration being functional. In fact, I'd submit to the court even the individual elements weren't supported by evidence that they are functional. That's what the court sua sponte or a priori decided that it would conclude, but there is no evidence as to those things. So this isn't that case where this court may have to face a situation and say, well, here's how we will deal with functionality. Getting back to the question, though, of these separate elements, how are we supposed to comprehend the overall visual similarity? Egyptian goddess answers that. It says that when you take the prior art and set it next to the accused and patented design, the elements from the prior art will show exactly how the accused and patented design are to be compared, and it will allow the reader to essentially read out those elements or those functions which are continuous through the prior art and therefore could be concluded to be necessary. And when the lower court did that here, it said, well, looking at the prior art, the accused and the patented design are more similar than any other of the prior art. Essentially, the court said, looking at the prior art and seeing the things that you have to have in these types of tools, I still don't see them in both the accused and patented design. He found that those functions inherently weren't in there. But yet he had made a finding without support, without evidence in the record, that somehow functional characteristics dictated the overall design. That simply wasn't supported. For that reason, the court should remand following a crane construction. How could you design this tool so it would have the same function and rearrange the parts? Could you have the hammer next to the crowbar? Yes, you could. In fact, pages of the record, 348 shows the hammer next to the crowbar and a claw at the top. Page 349 shows the claw at the back of the hammer. 355, claw at the back of the hammer. 377, a claw at the bottom of the thing, of the back of the hammer. And I wanted to point out to the court. Well, show me one. I'm not seeing where you're talking about this. Where is the situation where the hammer head is joined to the crowbar part? 349, hammer head with a crowbar at the back. The crowbar seems to be at the bottom. Oh, there's a crowbar on the back of the head as well. Showing it can be used for that. 355, crowbar behind the hammer head. 377, the gripping teeth below instead of in the middle. Well, Mr. Kushma, you've hammered your points home well. We'll save the rest of your rebuttal time. I would only want to give you that reference, Your Honor. Okay. Mr. Collins. Good morning, Your Honors. May it please the Court. This case isn't about errors by the trial court. It's errors by Mr. Richardson. He didn't get a utility patent. He got a design patent. And he wishes to cover the basic functional configuration of his step claw tool by morphing a design patent with a claim scope that basically is the equivalent of utility patent. And that's what we have here. But I'm a little puzzled as to why I didn't put on some expert testimony to support what the district court concluded, that is that function dictated the arrangement of the hammer, the claw, the crowbar, the handle. Well, there was testimony. Mr. Russell Powers put in an affidavit. Where does it say that? I don't think it says that. It says these components have to be arranged in that way. Part of the burden of proof is on Mr. Richardson for starters. Powers didn't say that, right? No, he actually said this is where you put a hammer because that's how you swing a hammer. You put it at the end of the handle. Where did he say that the arrangement was dictated by function? The district court made that conclusion based on his testimony as to how those parts were arranged. He didn't say it, right? I believe he did say that those are the way you use the best. Show me where he said it. I can't say that exact sentence. I'm sorry. Well, is there any evidence in the record that the judge actually relied on other than the conclusion regarding functionality? Is there evidence to support his conclusion? Absolutely. It's the design patent itself. Mr. Richardson's own step-claw ad tells you how to arrange these parts. 836, he attached it to his complaint. But the conclusion that the overall configuration is functional, that conclusion. So you're saying Mr. Powers, you believe, is the... Mr. Richardson's own step-claw ad explains to you how you have to arrange that this way with the part with the handle sticking out. And the district court judge relied upon that. What page? 836 of the appendix. Where does it say this? It's the step-claw advertisement. May I see where in the advertisement? Where in the advertisement? Yes. It's a multi-purpose tool that can be made in sizes to fit any need of personal preference. It provides at the top, it says, the invention called the step-claw provides a hammer that, when needed, can become a handy step for providing a variety of overhead work. The primary objective of this tool is to elevate the worker without the ladder. And it goes on in other places. And the picture shows you how he slotted over a two-by-four. But the ad doesn't say this is the only way you can arrange them. But that's not the point. The point is that it's the only way the plaintiff admits that it can be arranged. You can't have the hammer. Where's the admission? This advertisement is his admission. His product is his admission. That's how you step. You can't have the handle stick out at 45 degrees because you can't place your foot on the handle when it is slotted over a two-by-four. That's the functionality of this tool, is the tool is just, it's a hammer on one side, a jaw on the other, and it also functions as a step. And that's exactly what Mr. Richardson says. And his affidavit in conclusion really says, well, you could do things other ways. He doesn't really offer a different way. Where's the affidavit? Mr. Richardson's affidavit is, I believe, A32 in the record. A332, excuse me. 330? Yes. And he just basically summarizes the conclusion. He says, well, you could put those parts anywhere. It contradicts what his own step-claw advertisement that he filed with his complaint says. He's like, the crowbar, you could put it anywhere. The judge used common sense in looking at this, and looking at what the tool does, how it's arranged, and how Mr. Richardson advertised it. Mr. Powers, 30 years of experience working at Stanley Tools, knowing how these parts work, and fully explained how the FUBAR tools work. The fact of the matter is, those parts have to be where they have to be. A crowbar has to be at the end. Because there's a handle that you use, you need leverage to separate objects. You put the hammer at the other end because you need leverage and force to strike objects. The jaw is there where it must be so that the handle sticks out. This is exactly what Mr. Richardson claimed to have invented in his step-claw ad. And that's what he put in a design patent. The problem is, he put it in a design patent. He did not put it in a utility patent to protect the functional attributes. The Stanley Tool, when you look at it, the only things they have in common are the functional attributes. That's exactly what was in Odds-On. The situation in Odds-On was where the tail stuck into the end of the football so you could throw it further. This court looked at it and said, that tail is functional. And in that case, there was even more evidence. There was expert evidence brought in by the patent owner. And this court concluded and said, the tail provides a function. Let's look at it and see what's ornamental about it. And they looked at the curvature of the tail and concluded that to be the ornamental feature. And in that case, the accused infringer didn't have that tail. Just like in Lee, the back massage or a handle with the working elements on the end. This court said, you can't cover that general configuration with a broad design patent. You have to look at the surface treatment, the curvatures, the ornamentation on the handle and the balls. This case is exactly like Lee, and it's exactly like Odds-On. And the Gorham test, which Richardson's counsel alluded to, this court addressed it in Reed and said, the Gorham test, really in principle, Gorham didn't have functionality in dispute. It was the ornamentation of the spoon handles. Nobody disputed in Gorham that you can grab the handle of a spoon or a fork. But in Reed, they said, that wasn't the issue in Gorham, so we have to look at functionality. Because substantial similarity under Gorham is not just look at the products. It's substantial similarity of the non-functional ornamentation. And that's clear in this court's case law. So we have to look at the functional components he arranged, but the ornamentation he selected for them. And once you discount, which is exactly what the trial court did, was really kind of discount and back out the functional arrangements on these tools or the functional components. He said there was no ornamentation left in common whatsoever. And that was his conclusion. Are you saying the ornamentation of the functional portions of the instrument doesn't count? No, the ornamentation of the functional components do count. It's that you can't find infringement based on only functional common components. So you have to look at the ornamentation. Copyright has a separability issue. But here, you have to look at it and say, for example, I can bring this closer. In other words, the patented tool and the accused all have the same functional components. Sure. But they and the rest of the instrument look different. That's absolutely right. Very different. The crowbar is where it needs to be so you have leverage. The hammer is where it needs to be so you have leverage. The jaw is where it needs to be so the handle can stick out as a step, also for gripping leverage. Beyond that, Stanley doesn't have any of the same similarities. For example, the round hammerhead, Richardson could have selected an octagonal one, a square one. So round, for example, is something that's ornamental. And not to do an analogy, but you look through and that's what the ornamentation of these various pieces are. And so you lift that ornamentation and compare it to the Stanley tool. None of that ornamentation is in common. And this is a design patent, not a utility patent. And that's what we have to look at. Now if I may move on to the jury demand issue, if there are any more questions on the design patent issue. The jury demand issue is quite clear. Stanley filed its answer 30 days past. Richardson filed his jury demand. It's more than 10 days late. His argument is essentially that the motion to dismiss filed by Stanley tolls that 10-day period. He relies on the case U.S. v. Anderson. The reality is U.S. v. Anderson was quite different. You had an open counterclaim that had never been answered. The counterclaim itself, Anderson's case concluded, was not the last pleading. There was a pending motion to dismiss, but the counterclaim hadn't been answered. In this case, Stanley filed its answer. On September 22, 2009, Richardson waited 30 days to file his jury demand. It was late because the pleadings were settled and more than 10 days had passed. So next we have to move on to the waiver issue. Rule 39 is how it governs that, and the Ninth Circuit law on that issue is clear. You need a good cause more than a mistake, inadvertence, or a good faith mistake of law. Mr. Richardson didn't give the court any reason for the waiver. He actually never said he made a mistake. He never put in an affidavit saying, I missed the due date, I was sick, I was out of town. There was actually no concession as to whether or not it was a mistake whatsoever. So he left the court, irrespective of the abuse of discretion question. The court had no discretion. No reason was put into the record on this issue as to why he should grant Mr. Richardson relief on that issue. And the Ninth Circuit law is clear on that. There has to be, and that's the law that we apply to this case. And in fact, Daniel, the Fifth Circuit case on that issue, actually confirms that. It actually says in the language of Daniel, if I may quote, this analysis, because Richardson essentially asked this court to use the five-part analysis as Daniel, but the Fifth Circuit said, this analysis should not be construed as departing from our rule that the movement's mere inadvertence in not making a timely demand under Rule 38 provides no justification for invoking Rule 39. The Fifth Circuit even has the same rule as the Ninth Circuit. Their five-part test is really once you get over the threshold of the mere inadvertence. So the Fifth Circuit's five-part test doesn't apply here, not only because it's not the Ninth Circuit, but because they also follow the same threshold test as the Ninth Circuit. And if there's no further questions, I'll rest my case. Thank you, Mr. Collins. Mr. Krushma has a little time. And I'll take just a little time. As Mr. Collins pointed out, Mr. Richardson's affidavit is at Appendix 332, at 335, Paragraph 21. The design depicted in the 167 patent includes a hammer, a handle, a pry bar, and a jaw with teeth. There are a myriad of possible designs that include a hammer, a handle, a pry bar, and a jaw with teeth. Skipping down in sum, each of the functions that can be performed by the tool set forth in the 167 patent can be achieved in a way other than the design of the 167 patent. Now, essentially here, the trial court has replaced the points of novelty test with a points of ornamentation test, and then more problematically applied that without any evidence on the functionality. The court essentially found that the Gorham test, as interpreted by the recent decision in Egyptian Goddess, was satisfied. Quote, none of the prior art designs are similar to Richardson's design, as is Stanley's. Page 6. It then spends nine pages explaining why meeting the Gorham test was insufficient in this case. There's nothing in the prior law that permits this. The Lee case referenced by the district court and by Stanley isn't just inapposite. It actually is the opposite. In Lee, the patentee did not meet the overall visual similarity test under Gorham, but argued for an alternative test which would protect overall functionality, anything with two balls and a handle. Amini also counsels trial courts not to parse out visual designs into a laundry list of ornamental elements, which is what happened here. And finally, odds on is factually different. In that case, there was a showing that the tail fins had to be attached to the back of the football. The exact opposite evidence was present in this case. Thank you for your time. Thank you, Mr. Kirshmaier. We'll take the case under advisement.